ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| OFICINA DE ÉTICA GUBERNAMENTAL<br><br>Parte Recurrida<br><br>v.<br><br>JOSÉ GUILLERMO RODRÍGUEZ RODRÍGUEZ<br><br>Parte Recurrente | KLRA202400156 | *Revisión Judicial,* procedente de la Oficina de Ética Gubernamental de Puerto Rico<br><br>Caso Núm.: 22-11<br><br>Sobre:<br><br>Violación a los incisos (b), (h) y (s) del Artículo 4.2 de la Ley núm. 1-2012, según enmendada, Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico |
|---|---|---|

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Monge Gómez, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 24 de abril de 2024.

Compareció ante este Tribunal la parte recurrente, Sr. José Guillermo Rodríguez Rodríguez (en adelante, "señor Rodríguez" o "Recurrente"), mediante recurso de revisión judicial presentado el 26 de marzo de 2024. Nos solicitó la revocación de la *Resolución* emitida por la Oficina de Ética Gubernamental (en adelante, "OEG" o "Recurrida") el 24 de enero de 2024, notificada y archivada en autos en igual fecha. A través del aludido dictamen, el foro recurrido acogió la recomendación del Oficial Examinador de hallar al señor Rodríguez incurso en violación a los incisos (b) y (h) del Artículo 4.2 de la Ley Núm. 1-2012, según enmendada, *infra*, y le impuso una multa administrativa ascendente a $6,000.00 por tres infracciones a cada una de las aludidas disposiciones estatutarias, para un total de $12,000.00. Dicha determinación fue objeto de una solicitud de reconsideración que fue denegada mediante *Resolución en Reconsideración* de 28 de febrero de 2024, notificada y archivada en autos ese mismo día.

Por los fundamentos que expondremos a continuación, se *confirma* la *Resolución* emitida por la OEG.

**I.**

El caso de epígrafe tuvo su génesis con la presentación de una "**Querella**" por parte de la OEG en contra del Recurrente, quien al momento de los hechos se desempeñaba como alcalde del Municipio de Mayagüez. Allí, la Recurrida alegó que el señor Rodríguez violentó, en tres (3) ocasiones, las disposiciones de los incisos (b), (h) y (s), respectivamente, del Artículo 4.2 de la Ley Núm. 1-2012, según enmendada, conocida como la "Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico", 3 LPRA secs. 1857a (b), (h) y (s). Ello dentro del contexto de tres (3) nombramientos efectuados por el señor Rodríguez durante tres periodos distintos a su hermano, el Sr. Osvaldo Rodríguez Rodríguez.

Específicamente, la OEG sostuvo que el 23 de abril de 2001 el Recurrente solicitó a la entonces Oficina del Comisionado de Asuntos Municipales de Puerto Rico (OCAM) una autorización o dispensa para nombrar a su hermano en el servicio de confianza, al puesto de Ayudante de Desarrollo Comunal del ayuntamiento. Como consecuencia de dicha solicitud, el 2 de mayo de 2001, la entonces Comisionada de la OCAM, Lcda. Bárbara M. Sanfiorenzo Zaragoza, otorgó la dispensa solicitada y se le advirtió al señor Rodríguez que en caso de que su hermano fuera contratado, transferido o nombrado a otro cargo, se debía solicitar una nueva dispensa. Adicionalmente, manifestó la OEG que, a partir del mes de julio de 2001, la administración y otorgamiento de dispensas relacionadas con los municipios de Puerto Rico fue restituida a la OEG, por virtud de la derogada Ley Núm. 12 de 24 de julio de 1985, según enmendada, conocida como la "Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico de 1985", 3 LPRA secs. 1801 (derogada).

Además, la OEG adujo que el 14 de noviembre de 2001 se le orientó al Recurrente sobre los siguientes aspectos: (1) la prohibición legal de nepotismo; (2) sobre darle trato preferencial a su pariente; (3) sobre su deber de inhibirse ante la posibilidad de algún conflicto de intereses; y (4)

de su deber de no perder su independencia e imparcialidad como funcionario público. Añadió que, de conformidad con la Ley de Ética Gubernamental, el señor Rodríguez sólo podía renombrar a su hermano a un puesto en el Municipio si mediaban circunstancias excepcionales que hubieran sido evaluadas con anterioridad a que el Recurrente ejerciera su facultad de nombramiento como autoridad nominadora, siempre a discreción de la dirección ejecutiva de la OEG.

Argumentó que los días 13 de abril de 2013, 28 de febrero de 2017 y 15 de enero de 2021, el señor Rodríguez ejerció sus poderes como autoridad nominadora del ayuntamiento y nombró a su hermano en un puesto de confianza, sin solicitar previamente autorización de la OEG. Así pues, arguyó que dichos nombramientos constituyeron tres (3) actos de nepotismo proscrito por la Ley de Ética Gubernamental, *supra*, pues los mismo beneficiaron a una persona con quien el Recurrente tiene lazos de consanguinidad. Fundamentada en lo anterior, la Recurrida expresó que el señor Rodríguez puso en duda la imparcialidad e integridad del gobierno municipal al ejercer tareas de evaluación, selección, retención y nombramiento de personal.

El 16 de agosto de 2021, el Recurrente presentó "**Contestación a 'Querella' y Defensas Afirmativas**". En esencia, negó las aseveraciones esgrimidas por la OEG en su contra y alegó afirmativamente que las tres (3) acciones de personal por las cuales le imputaron violaciones a la Ley Núm. 1-2012, *supra*, no eran sino una retención en el puesto o extensión del nombramiento que se efectuó en el 2001. Asimismo, admitió su relación de consanguinidad con el Sr. Osvaldo Rodríguez Rodríguez.

El 12 de enero de 2022, el Recurrente presentó "**Moción Informativa**" en la que indicó que remitió a la OEG copia de cierto *Informe Pericial* suscrito por la Lcda. Emmalind García García. Así las cosas, el 20 de enero de 2022, la OEG presentó "**Moción en Oposición a presentación de sito sobre materia legal**" mediante la que sostuvo que aludido *Informe Pericial* no versaba sobre asuntos técnicos o especializados que excedieran del conocimiento del Oficial Examinador y,

por tanto, el conocimiento experto de la licenciada García García no era necesario para la adjudicación de la cuestión última en controversia. Tras la radicación de una réplica por parte del señor Rodríguez, la OEG emitió *Orden* mediante la cual no permitió la utilización de la prueba pericial anunciada fundamentada en que la Recurrida era la llamada a interpretar el derecho aplicable a las controversias planteadas, sin la necesidad de asistencia técnica sobre el tema.

El 11 de febrero de 2022, el Recurrente presentó "**Moción de Reconsideración**". Por vía de la *Orden* notificada el 10 de marzo de 2022, se les informó a las partes que los méritos de dicha solicitud serían discutidos en la *Conferencia sobre el Estado de los Procedimientos* pautada para el 11 de marzo de 2022. De igual forma, se le requirió al señor Rodríguez a que proveyera copia del *Informe Pericial* en controversia. Llegado el día del señalamiento, las partes tuvieron la oportunidad de exponer sus correspondientes posturas sobre la admisibilidad del *Informe Pericial*, acordaron el calendario del descubrimiento de prueba pendiente y establecieron la fecha de la reunión para la confección del *Informe de Conferencia con Antelación a la Audiencia*.

Así el trámite, la OEG emitió *Orden* mediante la cual concluyó que el Recurrente no pudo establecer la naturaleza y extensión del conocimiento científico, técnico o especializado que el testimonio de la licenciada García García ofrecería que pudiera ser indispensable para dilucidar la cuestión última a adjudicarse en el proceso. Por tanto, el foro recurrido declaró "No Ha Lugar" la solicitud de reconsideración interpuesta por el señor Rodríguez, pues le correspondía a dicho foro la interpretación del derecho a la luz de los hechos del caso. No obstante, tomó el *Informe Pericial* y la "**Moción de Reconsideración**" como una oferta de prueba del Recurrente.

Luego de la presentación del *Informe de Conferencia con Antelación a la Audiencia*, el 9 de agosto de 2022, la OEG presentó "**Solicitud de Resolución Sumaria**". Planteó que procedía disponer de los asuntos pendientes por la vía sumaria, pues no existían hechos materiales y

esenciales en controversia que justificaran la celebración de una vista adjudicativa. Sostuvo que los nombramientos autorizados por el señor Rodríguez a favor de su hermano al servicio de confianza constituían violaciones a la prohibición estatuida sobre el nepotismo, al no haber mediado autorización previa de la OEG. Por su parte, el Recurrente presentó "**Oposición a Solicitud de Resolución Sumaria**" y expuso que existía controversia sobre la naturaleza de las acciones de personal efectuadas sobre los tres (3) nombramientos en controversia y que a pesar de que el nombre del puesto que ocupaba el hermano del señor Rodríguez había cambiado, sus funciones permanecían inalteradas desde el 2001.

Tras la radicación de las correspondientes réplica y dúplica, el 10 de enero de 2024, se rindió el *Informe del Oficial Examinador* mediante el cual se recomendó que se encontrara incurso al Recurrente de tres (3) violaciones a los incisos (b) y (h) del Artículo 4.2 de la Ley Núm. 1-2012, *supra*, respectivamente, y la imposición de las consecutivas multas. Por último, se recomendó el archivo de las alegaciones relacionadas con la supuesta violación al inciso (s) del estatuto. El 24 de enero de 2024, la OEG emitió *Resolución* mediante la cual acogió en su totalidad el *Informe del Oficial Examinador* y le impuso al señor Rodríguez una multa administrativa de $6,000.00 por las tres (3) violaciones al inciso (b) de la Ley de Ética Gubernamental, *supra*, así como $6,000.00 adicionales por las tres (3) infracciones al inciso (h) de dicha pieza legislativa.

Inconforme con dicha determinación, el Recurrente presentó "**Moción de Reconsideración en torno a Resolución Sumaria**", la cual fue denegada mediante *Resolución en Reconsideración* notificada el 28 de febrero de 2024. Aún insatisfecho, el señor Rodríguez recurrió ante este Tribunal mediante el recurso de revisión judicial que nos ocupa. Le imputó al foro administrativo la comisión de los siguientes errores:

> **PRIMER ERROR: LA OFICINA DE ÉTICA GUBERNAMENTAL ACTUÓ DE MANERA ARBITRARIA, ILEGAL O IRRAZONABLE, ABUSANDO DE SU DISCRECIÓN, AL DENEGAR AL SEÑOR JOSÉ GUILLERMO RODRÍGUEZ RODRÍGUEZ LA PRESENTACIÓN DE PRUEBA PERICIAL EN VIOLACIÓN AL DEBIDO PROCESO DE LEY Y A LA LEY DE PROCEDIMIENTO ADMINISTRATIVO UNIFORME (LPAU).**

**SEGUNDO ERROR: LA OFICINA DE ÉTICA GUBERNAMENTAL ACTUÓ DE MANERA ARBITRARIA, ILEGAL O IRRAZONABLE, ABUSANDO DE SU DISCRECIÓN AL RESOLVER LA CONTROVERSIA DE EPÍGRAFE SUMARIAMENTE.**

**TERCERO ERROR: LA OFICINA DE ÉTICA GUBERNAMENTAL ACTUÓ DE MANERA ARBITRARIA, ILEGAL O IRRAZONABLE, ABUSANDO DE SU DISCRECIÓN AL RESOLVER QUE "EL SEÑOR JOSÉ GUILLERMO RODRÍGUEZ RODRÍGUEZ NECESITABA OBTENER DISPENSAS ADICIONALES DE LA OFICINA DE ÉTICA GUBERNAMENTAL PARA AVALAR LA CONTINUIDAD Y OCUPACIÓN DEL PUESTO, POR PARTE DE SU HERMANO, EL 3 DE ABRIL DE 2013, EL 28 DE FEBRERO DE 2017 Y EL 15 DE ENERO DE 2021, PARA EL CUAL SE OBTUVO UNA DISPENSA INICIAL (EL 2 DE MAYO DE 2001).**

**CUARTO ERROR: LA OFICINA DE ÉTICA GUBERNAMENTAL ACTUÓ DE MANERA ARBITRARIA, ILEGAL O IRRAZONABLE, ABUSANDO DE SU DISCRECIÓN AL RESOLVER QUE "EN AUSENCIA DE UNA DISPENSA PARA LAS DESIGNACIONES HABIDAS EL 3 DE ABRIL DE 2013, EL 28 DE FEBRERO DE 2017 Y EL 15 DE ENERO DE 2021, SE PRODUJO UN ACTO QUE LA LEY PROHÍBE- Y QUE REDUNDÓ EN EL BENEFICIO DE ACCESO A EMPLEO PÚBLICO REMUNERADO POR PARTE DEL SR. OSVALDO RODRÍGUEZ RODRÍGUEZ.**

**QUINTO ERROR: LA OFICINA DE ÉTICA GUBERNAMENTAL ACTUÓ DE MANERA ARBITRARIA, ILEGAL O IRRAZONABLE, ABUSANDO DE SU DISCRECIÓN, AL RESOLVER QUE EL SEÑOR JOSÉ GUILLERMO RODRÍGUEZ RODRÍGUEZ, INCURRIÓ EN TRES VIOLACIONES A CADA UNO DE LOS INCISOS (B) Y (H) DEL ARTÍCULO 4.2 DE LA LEY NÚM. 1 DE 3 DE ENERO DE 2012, SEGÚN ENMENDADA, MEJOR CONOCIDA COMO LA LEY ORGÁNICA DE LA OFICINA DE ÉTICA GUBERNAMENTAL DE PUERTO RICO, IMPONIÉNDOLE UNA MULTA DE $6,000.00 POR LAS TRES VIOLACIONES AL INCISO (B) Y $6,000.00 POR LAS TRES VIOLACIONES AL INCISO (H) DEL ARTÍCULO 4.2 DE LA LEY ORGÁNICA DE LA OFICINA DE ÉTICA GUBERNAMENTAL DE PUERTO RICO PARA UNA SUMA TOTAL DE $12,000.00 EN MULTAS.**

**SEXTO ERROR: LA OFICINA DE ÉTICA GUBERNAMENTAL ACTUÓ DE MANERA ARBITRARIA, ILEGAL O IRRAZONABLE, ABUSANDO DE SU DISCRECIÓN PORQUE EL PROPIO ARTÍCULO 4.2 (H) DE LA LEY ORGÁNICA DE LA OFICINA DE ÉTICA GUBERNAMENTAL DE PUERTO RICO ESTABLECE QUE LA AUTORIZACIÓN DE LA OFICINA DE ÉTICA GUBERNAMENTAL ES REQUERIDA EN CASOS DE NOMBRAMIENTO, ASCENSO, REMUNERACIÓN O CONTRATACIÓN DE UN PARIENTE. EN EL PRESENTE CASO EL SEÑOR OSVALDO RODRÍGUEZ RODRÍGUEZ EN NINGUNA DE LAS EXTENSIONES Y CONTINUIDAD EN SU PUESTO DE CONFIANZA EN EL MUNICIPIO DE MAYAGÜEZ DE 3 DE ABRIL DE 2013, EL 28 DE FEBRERO DE 2017 Y EL 15 DE ENERO DE 2021, FUE NOMBRADO, ASCENDIDO, REMUNERADO O CONTRATADO, EN**

**OTRO PUESTO, SINO QUE MÁS BIEN SE MANTENÍA EN EL MISMO PUESTO DE CONFIANZA QUE HABÍA ESTADO OCUPANDO ININTERRUMPIDAMENTE DESDE EL 2001.**

**SÉPTIMO ERROR: LA OFICINA DE ÉTICA GUBERNAMENTAL ACTUÓ DE MANERA ARBITRARIA, ILEGAL O IRRAZONABLE, ABUSANDO DE SU DISCRECIÓN PORQUE EL PROPIO ARTÍCULO 4.2 (H) DE LA LEY ORGÁNICA DE LA OFICINA DE ÉTICA GUBERNAMENTAL DE PUERTO RICO ESTABLECE QUE LA AUTORIZACIÓN DE LA OFICINA DE ÉTICA GUBERNAMENTAL NO ES REQUERIDA CUANDO SE TRATA DE UNA REVISIÓN GENERAL DE UN PLAN DE CLASIFICACIÓN.**

**OCTAVO ERROR: LA OFICINA DE ÉTICA GUBERNAMENTAL ACTUÓ DE MANERA ARBITRARIA, ILEGAL O IRRAZONABLE, ABUSANDO DE SU DISCRECIÓN PORQUE EL REQUISITO DE OBTENER UNA DISPENSA ANTE LA OFICINA DE ÉTICA GUBERNAMENTAL EN DICHOS CASOS EXCEDE DEL PODER QUE LA LEGISLATURA LE DELEGÓ A LA OFICINA DE ÉTICA GUBERNAMENTAL PARA REGLAMENTAR ACTUANDO DE MANERA ULTRA VIRES.**

**NOVENO ERROR: LA OFICINA DE ÉTICA GUBERNAMENTAL ACTUÓ DE MANERA ARBITRARIA, ILEGAL O IRRAZONABLE, ABUSANDO DE SU DISCRECIÓN PORQUE AL NO COMETER NINGUNA INFRACCIÓN BAJO EL ARTÍCULO 4.2 (H) DE LA LEY [O]RGÁNICA DE LA OFICINA DE ÉTICA GUBERNAMENTAL DE PUERTO RICO NO EXISTE EVIDENCIA SOBRE UN BENEFICIO NO PERMITIDO POR LEY BAJO EL ARTÍCULO 4.2 (B) DE LA LEY ORGÁNICA DE LA OFICINA DE ÉTICA GUBERNAMENTAL DE PUERTO RICO.**

**DÉCIMO ERROR: LA OFICINA DE ÉTICA GUBERNAMENTAL ACTUÓ DE MANERA ARBITRARIA, ILEGAL O IRRAZONABLE, ABUSANDO DE SU DISCRECIÓN PORQUE SI FUERE CORRECTO QUE EL SEÑOR JOSÉ GUILLERMO RODRÍGUEZ RODRÍGUEZ HUBIESE NOMBRADO A SU HERMANO, EL SEÑOR OSVALDO RODRÍGUEZ RODRÍGUEZ, EN EL 2013, 2017, Y 2021 A OCUPAR UN PUESTO DE CONFIANZA COMO RESOLVIÓ LA OFICINA DE ÉTICA GUBERNAMENTAL HUBIESE REQUERIDO EL CONSENTIMIENTO DE LA LEGISLATURA MUNICIPAL**.

El 1 de abril de 2024, emitimos *Resolución* mediante la cual le concedimos a la Recurrida un término de veinte (20) días para presentar su postura en torno al recurso que nos ocupa. En cumplimiento con lo anterior, el 22 de abril de 2024, la OEG presentó su "**Alegato en Oposición**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

La Ley Núm. 38-2017, según enmendada, conocida como la "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico", 3 LPRA sec. 9647 *et seq.* (en adelante, "LPAU"), tiene como objetivo proporcionar a la ciudadanía servicios públicos de calidad, eficiencia y prontitud, interpretándola y aplicándola de manera liberal para lograr estos propósitos, siempre protegiendo las garantías básicas del debido proceso de ley. En respuesta a ello, dicha ley habilita la disposición sumaria de las controversias bajo ciertas circunstancias. En específico, la sección 3.7 de esta ley dispone lo siguiente:

> (b) **Si la agencia determina a solicitud de alguna de las partes y luego de analizar los documentos que acompañan la solicitud de orden o resolución sumaria** y los documentos incluidos con la moción en oposición, así como aquéllos que obren en el expediente de la agencia, **que no es necesario celebrar una vista adjudicativa, podrá dictar órdenes o resoluciones sumarias, ya sean de carácter final**, o parcial resolviendo cualquier controversia entre las partes, que sean separable de las controversias, excepto en aquellos casos donde la ley orgánica de la agencia disponga lo contrario. 3 LPRA sec. 9647. (énfasis suplido).

Asimismo, esta sección indica que la agencia administrativa no podrá emitir órdenes o resoluciones sumarias en situaciones donde: (1) hay controversia sobre hechos materiales o esenciales, (2) hay alegaciones afirmativas en la querella que no han sido rebatidas, (3) los documentos presentados muestran una controversia real sobre un hecho material y esencial o (4) como cuestión de derecho no procede. Íd.

En esta misma línea, el Artículo 6.11 del Reglamento Núm. 8231 de 18 de julio de 2012, conocido como el "Reglamento sobre Asuntos Programáticos de la Oficina de Ética Gubernamental de Puerto Rico", regula el uso de la resolución sumaria en los procedimientos administrativos ante la Oficina de Ética Gubernamental. En lo pertinente, establece que:

> Cualquier parte podrá solicitar la resolución sumaria de todas o de cualquiera de las controversias a ser ventiladas en una audiencia mediante la presentación de una moción con no menos de veinte días calendario de antelación a dicha audiencia. La moción establecerá que no existe controversia

de hecho esencial que haya que determinar en la audiencia y estará fundada en documentos, sin limitarse a: declaraciones juradas, certificaciones, grabaciones, videos o fotografías.

Es sabido que, por lo general, las Reglas de Procedimiento Civil no aplican automáticamente a los procedimientos administrativos. Pérez v. VPH Motors Corp., 152 DPR 475, 484 (2000). Sin embargo, nuestro Tribunal Supremo ha establecido que en casos apropiados se pueden adoptar normas de procedimiento civil para guiar el desarrollo del proceso administrativo, siempre que no sean incompatibles y contribuyan a una solución justa, rápida y económica de los casos. Íd. pág. 484. Tomando esto en consideración, y reconociendo que la LPAU contempla la resolución sumaria de controversias, se extiende la aplicación de las disposiciones de la Regla 36 de Procedimiento Civil a dichos casos sumarios. 32 LPRA Ap. V, R. 36.

En ese sentido, se considera un hecho material o esencial, "aquel que pueda afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". Oriental Bank v. Caballero García, 212 DPR 671, 679 (2023). Cabe señalar que el juzgador no está limitado a los hechos o documentos que se produzcan en la solicitud, sino que puede tomar en consideración todos los documentos que obren en el expediente de la agencia. S.L.G. Szendrey-Ramos v. Consejo Titulares, 184 DPR 133, 167 (2011). Así pues, se dispondrá del caso sumariamente cuando el Tribunal o la agencia cuente con la verdad de todos los hechos necesarios para resolver la controversia y surja claramente que la parte promovida por el recurso no prevalecerá. Oriental Bank v. Caballero García, *supra*, pág. 678.

Por su parte, la parte que se opone a la resolución sumaria de una controversia debe identificar y rebatir los hechos fundamentales que considera están en disputa y que son relevantes para la causa de acción presentada por la parte que la promueve. Rosado Reyes v. Global Healthcare, 205 DPR 796, 808 (2020); Oriental Bank v. Perapi *et al*., 192 DPR 7, 25-26 (2014). Así, la parte que se opone a resolver la controversia de manera sumaria debe controvertir la prueba presentada y no cruzarse de brazos. ELA v. Cole, 164 DPR 608, 626 (2005). Esta no puede

descansar en meras afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva, sino que está obligada a presentar contradeclaraciones juradas y/o contradocumentos que pongan en controversia los hechos presentados por el promovente. Oriental Bank v. Caballero García, *supra*, pág. 680; Roldán Flores v. M. Cuebas *et al.*, 199 DPR 664, 677 (2018).

Según las directrices pautadas por nuestro más alto foro, una vez se presenta la solicitud de disposición sumaria y su oposición, el tribunal o la agencia deberá: (1) analizar todos los documentos incluidos en ambas mociones y aquellos que obren en el expediente; y (2) determinar si la parte opositora controvirtió algún hecho material o si hay alegaciones en la querella que no han sido refutadas en forma alguna por los documentos. Abrams Rivera v. ELA, DTOP y otros, 178 DPR 914, 932 (2010).

Al examinar la procedencia de una moción que solicita disponer de un caso sumariamente, el tribunal o la agencia no tiene que sopesar la evidencia y determinar la veracidad de la materia, sino que su función estriba en determinar la existencia o no de una controversia genuina, la cual amerite ser dilucidada en una vista. JADM v. Centro Comercial Plaza Carolina, 132 DPR 785, 802-803 (1983). Además de que "[t]oda inferencia razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se resuelva sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a ésta". ELA v. Cole, 164 DPR 608, 626 (2005).

En el caso de revisar la determinación del TPI o de una agencia administrativa respecto a una sentencia o resolución sumaria, este foro apelativo se encuentra en la misma posición que el foro de instancia o la agencia para evaluar su procedencia. Rivera Matos et al. v. Triple-S et al., 204 DPR 1010, 1025 (2020); Meléndez González et al. v. M. Cuebas, 193 DPR 100, 118 (2015). La revisión que realice el foro apelativo deberá ser *de novo* y estará limitada a solamente adjudicar los documentos presentados en el foro apelado. Vera v. Bravo, 161 DPR 308, 335 (2004). De modo que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia o la

agencia. Íd. Además de esta limitación, se ha aclarado que al foro apelativo le está vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia o a la agencia. Vera v. Dr. Bravo, *supra*, págs. 334-335.

En Meléndez González et al. v. M. Cuebas, *supra*, nuestro más Alto Foro delimitó los pasos del proceso a seguir para la revisión de la sentencia o resolución sumaria por parte de este foro revisor, el cual consiste de: (1) examinar de novo el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia exigen; (2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles son incontrovertibles; (4) y, de encontrar que los hechos materiales realmente son incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia o la agencia administrativa aplicó correctamente el derecho a la controversia. Íd., págs. 118-119.

**B.**

En nuestro ordenamiento jurídico las decisiones de los foros administrativos se presumen como válidas y correctas. González Segarra *et al.* v. CFSE, 188 DPR 252, 276 (2013). Las conclusiones de estas agencias merecen una gran deferencia por parte de los tribunales lo que subraya la necesidad de ser cuidadosos al intervenir con las determinaciones administrativas. Íd. Es por ello que el criterio predominante para los tribunales es la razonabilidad en la actuación de la agencia. Íd.

Así pues, los tribunales no deben interferir ni modificar las determinaciones de hechos de un organismo administrativo si están respaldadas por evidencia sustancial que se encuentre en el expediente administrativo considerado en su totalidad. Otero v. Toyota, 163 DPR 716,

727-728 (2005). La evidencia sustancial se refiere a información relevante que una mente razonable podría aceptar como suficiente para sostener una conclusión. Íd.

Con esto en cuenta, si una parte afectada quiere impugnar las determinaciones de hechos de una agencia administrativa, tendrá que demostrar la existencia de otra prueba que indique que la actuación de la agencia no está fundamentada en evidencia sustancial o que disminuya el valor de la prueba impugnada. González Segarra et al. v. CFSE, *supra*, pág. 277. Si no puede lograrlo, el Tribunal respetará las determinaciones de hechos y no reemplazará el criterio de la agencia por el suyo. Íd.

Ahora bien, la situación es diferente cuando se trata de conclusiones de derecho. Esto es, el Tribunal tiene la facultad de examinar las conclusiones de derecho de la agencia en todos sus aspectos sin restricciones normativas o de criterio. Íd. No obstante, si la interpretación de la ley realizada por la agencia es razonable, aunque no sea la única opción justificada, los tribunales deben mostrarle deferencia. Hernández, Álvarez v. Centro Unido, 168 DPR 592, 616 (2006). Esto se debe a que reconocen la experiencia y conocimiento especializado de la agencia en la materia.

En síntesis, al desempeñar su labor de revisión, los tribunales no pueden descartar libremente las conclusiones e interpretaciones de derecho de la agencia. González Segarra et al. v. CFSE, *supra*, pág. 277. La deferencia no será concedida cuando: (1) la decisión no está basada en evidencia circunstancial, (2) el organismo administrativo ha errado en la aplicación de la ley o (3) ha mediado una actuación ilegal o una decisión carente de una base racional. Otero v. Toyota, *supra*, pág. 729.

**C.**

La Ley Núm. 1-2012, según enmendada, conocida como la "Ley Orgánica de Ética Gubernamental de Puerto Rico", regula la conducta de los servidores y exservidores públicos de la Rama Ejecutiva del Gobierno de Puerto Rico. 3 LPRA sec. 1857. Su propósito principal es revitalizar y reafirmar la función preventiva y de fiscalización de la OEG para abordar

los desafíos de un servicio público íntegro, donde los intereses personales de los servidores no suplanten los intereses de la ciudadanía. *Véase*, Exposición de Motivos, Ley Núm.1-2012, *supra*. Su misión incluye, entre otros aspectos, instruir al servidor público para que, al realizar sus labores, refleje los valores de honestidad, respeto y civismo que guían la administración pública. 3 LPRA sec. 1855.

En relación con la conducta atribuida a la parte recurrente, el Artículo 4.2 de la referida ley dispone lo siguiente:

(b) Un servidor público **no puede utilizar los deberes y las facultades de su cargo** ni la propiedad o los fondos públicos para obtener, directa o indirectamente, para él o para una persona privada o negocio, cualquier beneficio que no esté permitido por ley.

[…]

(h) **La autoridad nominadora o un servidor público con facultad de decidir o de influenciar a la autoridad nominadora, no puede intervenir, directa o indirectamente, en el nombramiento, ascenso, remuneración o contratación de su pariente. Se entenderá que un servidor público tiene facultad para decidir o influenciar cuando una ley, reglamento, descripción de deberes o designación así lo disponga**. <u>**Esta prohibición no aplica cuando, a discreción de la Dirección Ejecutiva, medien circunstancias excepcionales que hayan sido evaluadas con anterioridad a que la autoridad nominadora o el servidor público con facultad de decidir o de influenciar ejerzan dicha facultad**</u>.

Tampoco aplica a un puesto de carrera cuando se cumpla con el principio de mérito; a las promociones, ascensos o transacciones de personal requeridas por ley; a las revisiones generales de un plan de clasificación; al recibo de los beneficios del programa de Sección 8; a las subastas públicas en las que concurran todos los requisitos establecidos por ley; a la participación en los programas de verano ni al recibo de servicios, préstamos, garantías o incentivos otorgados bajo los criterios de un programa estatal, federal o municipal. Todo ello siempre que, bajo las anteriores excepciones, se cumpla con las normas de aplicación general y que la autoridad nominadora o el servidor público con facultad de decidir o de influenciar no intervenga y lo certifique mediante una inhibición formal.

[…]

(s) Un servidor público no puede llevar a cabo una acción que ponga en duda la imparcialidad e integridad de la función gubernamental. 3 LPRA sec. 1857a (énfasis suplido).

Por su parte, el Artículo 1.2 de la Ley de Ética Gubernamental provee las siguientes definiciones:

[…]

(d) Ascender — cualquier nombramiento a un cargo o puesto de mayor remuneración económica o jerárquica.

[…]

(h) Autoridad nominadora — aquel o aquellos cuya función inherente es la de nombrar, ascender, remunerar o contratar.

[…]

(i) Beneficio — cualquier provecho, utilidad, lucro o ganancia, sin limitar el término a una ganancia pecuniaria o material, sino que denota cualquier forma de ventaja.

[…]

(w) Nombrar — designación oficial de cualquier naturaleza para realizar determinadas funciones.

[…]

(y) Pariente — los abuelos, los padres, los hijos, los nietos, los tíos, los hermanos, los sobrinos, los primos hermanos, el cónyuge, los suegros y los cuñados del servidor público, así como los hijos y los nietos de su cónyuge. 3 LPRA sec. 1854.

En este contexto, las referidas disposiciones legales buscan salvaguardar la integridad y objetividad en el desempeño de la función pública. Al definir claramente quiénes se consideran parientes, la ley establece un marco claro para prevenir cualquier influencia indebida o nepotismo en el ámbito laboral. Al mismo tiempo, fortalece la confianza en el sistema al promover la equidad en el acceso a oportunidades. De igual forma, garantiza que las acciones sean tomadas de manera justa y equitativa, promoviendo así la transparencia en las entidades gubernamentales.

**III.**

Por estar íntimamente relacionados, discutiremos conjuntamente del segundo al décimo señalamiento de error presentados por el Recurrente.

En esencia, el señor Rodríguez plantea que el foro recurrido incidió en el ejercicio de su discreción al resolver que la controversia podía disponerse de forma sumaria y que necesitaba obtener dispensas adicionales de la OEG para respaldar la ocupación del puesto de su hermano en tres (3) periodos distintos, que resultó en hallarlo incurso en tres violaciones a cada uno de los incisos (b) y (h) del Articulo 4.2 de la Ley Núm. 1-2012, *supra*. No nos convence su postura. Veamos.

Conforme hemos citado, las Reglas de Procedimiento Civil no aplican automáticamente a los procedimientos administrativos, pero pueden ser utilizadas en casos adecuados para ayudar a una resolución justa y eficiente de los casos. Pérez v. VPH Motors Corp., *supra,* pág. 484. Debido a que la LPAU, *supra*, incorpora la resolución sumaria de controversias, las disposiciones de la Regla 36 de Procedimiento Civil se aplican también a estos casos. 32 LPRA Ap. V. R. 36. Así pues, procede resolver una disputa sumariamente si conforme a la evidencia presentada, no existe controversia real y sustancial en cuanto a algún hecho esencial y pertinente del caso. Id. Un hecho material es aquel que tiene el potencial de impactar el resultado de la reclamación. Oriental Bank v. Caballero Garcia, *supra*, pág. 7. Para ello, el Tribunal debe tener a su disposición todos los hechos necesarios para resolver la controversia. Íd. Esto es, que estamos impedidos de disponer de un caso por la vía sumaria cuando existan hechos fundamentales controvertidos. SLG Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168.

Tras un minucioso análisis de los documentos que obran en el expediente, constatamos la ausencia de controversia sobre hechos materiales o sustanciales que impidan resolver el caso, sin la celebración de una vista adjudicativa. Por tanto, a base del análisis *de novo* que venimos compelidos a efectuar, acogemos como nuestros los hechos esenciales y pertinentes sobre los cuales la OEG entendió que no existe controversia, a saber:

1. El Sr. Osvaldo Rodríguez Rodríguez es hermano del Querellado.
2. La relación de consanguinidad existente entre el Sr. Osvaldo Rodriguez Rodríguez y el Sr. Rodríquez implica una relación de parentesco, según se define en el inciso (y) del artículo 1.2 de la Ley 1-2012.
3. El señor Rodríguez se ha desempeñado corno alcalde del Municipio Autónomo de Mayagüez desde el 11 de enero de 1993 hasta el presente.
4. El señor Rodríguez es, por tanto, un servidor público, según lo define el articulo 1.2(gg) de la Ley 1-2012.
5. Como parte de sus funciones como alcalde del Municipio Autónomo de Mayagüez, el señor Rodríguez tiene facultad de otorgar y extender nombramientos a empleados y funcionarios del Municipio.

6. El 23 de abril de 2001, el señor Rodríguez solicitó, a la Oficina del Comisionado de Asunto Municipales ("OCAM"), una autorización o dispensa para nombrar a su hermano, el Sr Osvaldo Rodríguez Rodríguez, en el Municipio.

7. El 2 de mayo de 2001, la Lcda. Bárbara M. Sanfiorenzo Zaragoza, entonces Comisionada de la OCAM, otorgó la dispensa solicitada para el nombramiento del Sr. Osvaldo Rodríguez Rodríguez en el Municipio de Mayagüez.

8. En la dispensa concedida el 2 de mayo de 2001, la Comisionada de la OCAM lo advirtió al señor Rodríguez que, en el caso do que su hermano fuera contratado, transferido o nombrado en otro cargo, debía solicitar una nueva dispensa.

9. El nombramiento, que fue extendido el 23 de abril de 2001 por el Sr. Rodríguez a su hermano, el Sr. Osvaldo Rodríguez Rodríguez (en consonancia con la dispensa concedida), fue a un puesto de confianza bajo el título de director de Desarrollo Comunal.

10. A partir de julio de 2001, la administración y otorgación de dispensas relacionadas a municipios dejó de ser facultad de la OCAM y se restituyó a manos de la Oficina de Ética Gubernamental de Puerto Rico, en virtud de la Ley 53-2001.

11. El 14 de noviembre de 2001, la Oficina de Ética Gubernamental de Puerto Rico, por conducto de su entonces Subdirector Ejecutivo, mediante misiva, orientó al señor Rodríguez sobre la prohibición legal del nepotismo. También, le orientó sobre la prohibición de darle un trato preferencial a su pariente, su deber de inhibirse ante la posibilidad de conflicto de intereses y su deber de no perder su independencia e imparcialidad como funcionario público.

12. Tanto la Ley 1-2012 como la Ley derogada por esta, Ley 12-1985, conocida como *Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico,* contienen disposiciones que prohíben a la autoridad nominadora de un municipio realizar nombramientos de sus parientes.

13. El señor Rodríguez resultó electo alcalde del Municipio Autónomo de Mayagüez en las elecciones generales celebradas en 2012, 2016 y 2020.

14. El 7 de febrero de 2013, el señor Osvaldo Rodríguez Rodríguez puso a disposición del Querellado el puesto de confianza que ocupaba en ese momento por medio de una misiva dirigida al alcalde intitulada "*Renuncia*"*.*

15. El 3 de abril de 2013, el señor Rodríguez ejerció sus poderes y facultades como autoridad nominadora y suscribió una carta, dirigida a su hermano, por medio de la cual intimó "…en virtud de los poderes que me confiere la Ley…le extiendo su Nombramiento de Confianza, por lo que continuará dentro d mi equipo de trabajo como Ayudante Ejecutivo."

16. El 28 de febrero de 2017 el Sr. Rodríguez ejerció sus poderes y facultades como autoridad nominadora y suscribió un *Informe de Cambio* con fecha de efectividad inmediata, a los fines de que su hermano ocupara el puesto de confianza de Ayudante Ejecutivo.

17. El 15 de enero de 2021, el señor Rodríguez ejerció sus poderes y facultades como autoridad nominadora y determinó

que su hermano, Sr. Osvaldo Rodríguez Rodríguez, ocupara el puesto de confianza de Ayudante Ejecutivo.

18. Las acciones de personal tomadas por el señor Rodríguez el 3 de abril de 2013, el 28 de febrero de 2017 y el 15 de enero de 2021, en relación con el Sr. Osvaldo Rodríguez Rodríguez, no contaron con una previa autorización o "dispensa" emitida por la OEG.

Conforme hemos adelantado, la Ley Núm. 1-2012, *supra*, establece que un funcionario público no puede emplear los deberes y las facultades de su cargo para obtener, ya sea directa o indirectamente, algún beneficio que no esté autorizado por ley. 3 LPRA sec. 1857a (b). Asimismo, dicho estatuto dispone que la autoridad nominadora no puede influir, directa o indirectamente, en el nombramiento, ascenso, remuneración o contratación de un familiar. 3 LPRA sec. 1857a (h). Esta limitación no aplica cuando median circunstancias excepcionales que hayan sido evaluadas con anterioridad a que la autoridad nominadora ejerza tal facultad. Íd.

Dentro de este contexto, la autoridad nominadora se refiere a aquel encargado de nombrar, ascender, remunerar o contratar. 3 LPRA sec. 1854 (h). Según la ley, el término "beneficio" abarca cualquier provecho, utilidad, lucro o ganancia que denota cualquier forma de ventaja. 3 LPRA sec. 1854 (i). **Además, el acto de nombrar se define como la designación oficial para realizar ciertas funciones**. 3 LPRA sec. 1854 (w). Asimismo, de conformidad con la Ley Núm. 1-2012, *supra*, el concepto "pariente" incluye a los hermanos. 3 LPRA sec. 1854 (y).

A la luz de todo lo anterior, es forzoso concluir que las transacciones de personal efectuadas por el señor Rodríguez los días 3 de abril de 2013, 28 de febrero de 2017 y 15 de enero de 2021, constituyen tres violaciones distintas a los incisos (b) y (h) de la Ley Núm.1-2012. Esto es así ya que la Ley de Ética Gubernamental, *supra*, prohíbe que las autoridades nominadoras participen directamente en el nombramiento de sus parientes, evitando así conflictos de intereses. Sin duda, el cargo de alcalde es la figura principal en un ayuntamiento y, como tal, es la autoridad nominadora que goza de las prerrogativas de **nombrar**, ascender, **remunerar o contratar empleados**.

No albergamos duda de que la decisión del señor Rodríguez de designar al señor Osvaldo Rodríguez Rodríguez como Ayudante Ejecutivo equivale a un nombramiento, ya que implica la selección de una persona para que realice funciones específicas. Así pues, las acciones del Recurrente de permitir que su hermano ocupara dicho puesto en distintos periodos, sin solicitar permiso o autorización de la OEG, implican la utilización indebida de sus deberes y facultades para que este último obtuviera un beneficio que no está permitido por ley. Esto es, intervenir en el nombramiento de su hermano, quien cualifica como pariente, conforme la Ley de Ética Gubernamental, *supra*, no sólo violentó la prohibición al nepotismo instrumentada en el estatuto, sino que también significó la utilización de las facultades que la ley le reconoce y los fondos públicos designados al Municipio para que su hermano obtuviese un beneficio proscrito en nuestra jurisdicción.

Es menester destacar que el Recurrente no solo no pidió autorización para nombrar a su hermano en un puesto de confianza, sino que tampoco se desprende del expediente que existieran circunstancias excepcionales que derrotaran la prohibición de nombrar familiares. Así pues, al efectuar dichas transacciones de personal, el señor Rodríguez se desvió de los postulados que proscriben el nepotismo en todo tipo de estructura de gobierno estatal y municipal. Debemos enfatizar, igualmente, que las transacciones de personal autorizadas por el señor Rodríguez, *so color* de su autoridad como alcalde, no estaban cobijadas por las excepciones prescritas por el Artículo 4.2 (h) de la Ley de Ética Gubernamental, *supra*. Y aún si ignoráramos lo anterior, tampoco se desprende que el Recurrente cumplió con las disposiciones de dicho Artículo y certificó su no intervención en el proceso mediante una inhibición formal o la debida notificación a la OEG, de conformidad con el Artículo 4.5 de la Ley Núm. 1-2012, *supra*. 3 LPRA sec. 1857d.

En fin, la actuación correcta debió haber sido solicitar la autorización para nombrar a su hermano al puesto de confianza, en todos y cada uno de los periodos en que fue reelecto como alcalde del Municipio de

Mayagüez, tal como lo hizo el 23 de abril de 2001, cuando solicitó autorización de la OCAM para efectuar dicho nombramiento. La prueba documental con la que contaba la OEG al momento de adjudicar la solicitud de sentencia sumaria dirigía la balanza hacia dicha conclusión, pues la dispensa aprobada por la OCAM en el año 2001 no podía servir como una carta abierta para justificar acciones de personal contrarias a la prohibición de nepotismo que dispone la Ley de Ética Gubernamental, *supra*.

Por último, el señor Rodríguez alega que su hermano no ha dejado de ser empleado en el servicio de confianza del Municipio de Mayagüez, por lo que nunca ha sido renombrado. Acoger esta teoría equivaldría a permitir que las autoridades nominadoras evadan la necesidad de solicitar dispensas para nombrar, ascender, remunerar o contratar a sus parientes o incluso que no evidencien la existencia de circunstancias excepcionales que ameriten tales acciones de personal. Esto podría acarrear serias consecuencias, ya que implicaría la aceptación de prácticas que contradicen los principios de imparcialidad en la gestión pública.

Finalmente, y conforme nuestra determinación de sostener la *Resolución* de la OEG que dispuso de las controversias ante su consideración por la vía sumaria, se hace innecesario adjudicar la procedencia del primer señalamiento de error. Ello puesto que el aludido señalamiento versa sobre la denegatoria previa de la OEG de permitirle al Recurrente la utilización de una perito en lo que hubiera sido la vista adjudicativa del caso. Es decir, dicha controversia se ha tornado académica al colegir que la Recurrida actuó correctamente al adjudicar los asuntos ante nos sumariamente.

En suma, somos de la opinión de que el señor Rodríguez debió haber solicitado autorización de la OEG para nombrar a su hermano como Ayudante Ejecutivo como lo hizo el 3 de abril de 2013, el 28 de febrero de 2017 y el 15 de enero de 2021, respectivamente. Así pues, concluimos expresamente que el Recurrente no aportó evidencia suficiente para derrotar la presunción de corrección de la cual están investidas las decisiones del foro administrativo. En el ejercicio de nuestra función

revisora, venimos compelidos a darle deferencia a la especialización, experiencia y las cuestiones propias de la discreción o pericia de las agencias administrativas. Tal y como hemos adelantado, somos de la opinión de que la agencia recurrida no actuó de manera arbitraria, ilegal, irrazonable o fuera del marco de los poderes que se le delegaron y, por tanto, no se cometieron los errores imputados.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral de la presente *Sentencia*, se *confirma* la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones